BENJAMIN M. WEGENER, ESQ.
Colorado Bar No. 36952
*Pro Hac Vice Pending*
DALEN B. PORTER, ESQ.
Colorado Bar No. 55460
*Pro Hac Vice Pending*
**WEGENER LANE & EVANS, P.C.**
743 Horizon Court, Suite 200
Grand Junction, Colorado 81506
Tel: (970) 242-2645
ben@wlelegal.com
dalen@wlelegal.com
*Attorneys for Plaintiff*

ERIC K. STRYKER, ESQ.
Nevada Bar No. 5793
JAMES V. LOVETT, ESQ.
Nevada Bar No. 16103
**FREEMAN MATHIS & GARY, LLP**
770 E. Warm Springs Road, Suite 360
Las Vegas, Nevada 89119
Tel.: (725) 258-7360
Fax: (833) 336-2131
Eric.Stryker@fmglaw.com
James.Lovett@fmglaw.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NUCLEAR CARE PARTNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ATOMIC LEGACY HOME HEALTH, LLC, a Nevada limited liability company; ATOMIC HOME HEALTH, LLC, a Washington limited liability company.<br><br>Defendants. | Case No.: 2:26-cv-00640<br><br>**PLAINTIFF NUCLEAR CARE PARTNERS, LLC'S COMPLAINT** |

**PLAINTIFF NUCLEAR CARE PARTNERS, LLC'S COMPLAINT**

COMES NOW Plaintiff Nuclear Care Partners, LLC, by and through its undersigned attorneys, and for its Complaint against Defendants Atomic Legacy Home Health, LLC and Atomic Home Health, LLC, states as follows:

## I. PARTIES

1. Plaintiff Nuclear Care Partners, LLC (hereinafter "Plaintiff" or "NCP") is a limited liability company organized under the laws of the State of Nevada with its principal place of business at 631 24 1/2 Rd, Suite C, Grand Junction, Colorado 81505.

2. Upon information and belief, Defendant Atomic Legacy Home Health, LLC (hereinafter "Defendant Atomic Legacy") is a Nevada limited liability company with its principal place of business located at 3601 W. Sahara Avenue, Suite 102, Las Vegas, Nevada 89102, and is a resident of the State of Nevada.

3. Upon information and belief, Defendant Atomic Home Health, LLC (hereinafter "Defendant Atomic") is a Washington limited liability company with its principal place of business located at 303 Bradley Blvd, Suite 202, Richland, Washington 99352, and is a resident of the State of Washington.

4. Upon information and belief, Defendant Atomic is also a resident of the State of Nevada as it conducts business in the State of Nevada and is subject to the Court's personal jurisdiction.

## II. JURISDICTION AND VENUE

5. Plaintiff incorporates all the allegations in the foregoing Paragraphs as being fully incorporated herein by reference.

6. The Court has personal and subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as Defendant Atomic and Defendant Atomic Legacy are residents of the State of Nevada.

## III. GENERAL ALLEGATIONS

8. Plaintiff incorporates all the allegations in the foregoing Paragraphs as being fully incorporated herein by reference.

9. NCP began operating its business in Nevada in 2011 under the tradename, "Nuclear Care Partners," as an in-home nursing and home healthcare service provider that markets its healthcare services towards beneficiaries of the Energy Employees Occupational Illness Compensation Program Act (hereinafter "EEOICPA"), *i.e.*, former Department of Energy workers, contractors, and their beneficiaries.

10. NCP has filed its application for federal registration of the wordmark, "Nuclear Care Partners," with the United States Patent and Trademark Office (hereinafter "USPTO") on August 7, 2025, at U.S. Serial No. 99326019.

11. In December 2011, NCP began operating its business and marketing its healthcare services in interstate commerce with the expansion of its business operations into Colorado.

12. NCP began operating its business and marketing its healthcare services in the State of Washington in May 2016.

13. Currently, NCP operates its in-home nursing and home health care business in interstate commerce by advertising and rendering its services in twenty-eight (28) states, including advertising on the Internet.

14. NCP's office location within the State of Washington is located at 925 Stevens Drive, Suite #3a, Richland, WA 99352.

15. NCP's office location within Nevada is located at 2355 Red Rock Street, Las Vegas, NV 89146.

16. In April 2011, NCP began using the following service mark in interstate commerce in connection with its services advertised and rendered and continues to use the mark:

NCP
NUCLEAR CARE PARTNERS
*Helping Families Live Well At Home*

17. The mark identified hereinabove in Paragraph 16 was registered with the USPTO on May 12, 2015, at U.S. Trademark Registration No. 4734662, with NCP as the owner.

18. In April 2011, NCP began using the following service mark in interstate commerce in connection with its services advertised and rendered and continues to use the mark:

19. The mark identified hereinabove in Paragraph 18 was registered with the USPTO on November 1, 2016, at U.S. Trademark Registration No. 5071734, with NCP as the owner.

20. In September 2014, NCP began using the following service mark in interstate commerce in connection with its services advertised and rendered and continues to use the mark:

NUCLEAR
CARE
PARTNERS

21. The mark identified hereinabove in Paragraph 20 was registered with the USPTO on November 8, 2016, at U.S. Trademark Registration No. 5076814, with NCP as the owner.

22. NCP's three (3) registered marks at U.S. Trademark Registration Nos. 4734662, 5071734, and 5076814 are all associated with International Class 044, which includes services related to "Health care; Healthcare; Holistic health services; Home-visit nursing care; Home health care services; Home nursing aid services; Providing health information; Providing in-person holistic health care services; Providing limited in-home personal medical services for individuals including checking vital signs, medication compliance and individual hygiene, checking medical equipment and supplies, and providing on-line information related to these personal medical services; Providing medical testing

of fitness and medical consultations to individuals to help them make health, wellness and nutritional changes in their daily living to improve health."

23. NCP's registered trademarks at U.S. Trademark Registration Nos. 4734662, 5071734, and 5076814 are valid and enforceable marks and are incontestable, and the registration statements are all incorporated herein by reference.

24. NCP did not claim any color in its applications to the USPTO; however, the following color schemes have been used in interstate commerce by NCP with its registered marks:

25. In December 2015, NCP began using the service wordmark, "Atomic Health News," and the following service design mark in connection with its services advertised and rendered in interstate commerce through use in multiple states of operation, including in Nevada:

26. In December 2016, NCP began using the marks identified hereinabove in Paragraph 25 in the State of Washington, among other states.

27. "Atomic Health News" has historically been a quarterly publication issued by NCP directly to its current patients to promote brand loyalty and provide information about NCP's services and EEOICPA benefits which is provided through the rendering of services by NCP, and it is also used to market/advertise to prospective patients by including the publications on NCP's website.

28. NCP has used Atomic Health News and the marks identified hereinabove in Paragraph 24 on a continuous basis in interstate commerce since December 2015 and continues to use them in interstate commerce to date.

29. All of NCP's unregistered and registered service marks identified hereinabove, including its wordmark "Atomic Health News" (hereinafter collectively, the "Marks"), have been and are in use in interstate commerce and are valid and enforceable marks entitled to protection under the Lanham Act and applicable state law.

30. Through NCP's continued use of the Marks in connection with its business and the advertising and rendering of its services in interstate commerce, the Marks have each gained recognition and goodwill among consumers, and the Marks are individually, inherently distinctive marks.

31. Upon information and belief, Defendant Atomic and Defendant Atomic Legacy (hereinafter collectively "Defendants") are owned and operated only by Stephen Wendt and Kristin Wendt, who are married.

32. Defendant Atomic was formed in the State of Washington on May 13, 2019.

33. Defendant Atomic markets, advertises, and provides the same in-home nursing and home health care services as NCP does, to the same market and prospective patients that NCP advertises and renders its services to, which are EEOICPA beneficiaries.

34. In or around 2019, Defendant Atomic began using the tradename, "Atomic Home Health," and the following service marks and color schemes to market and advertise its services in Washington while rendering services in Washington and continues to use them to date, including on its website:



35. The marks identified hereinabove at Paragraph 34 are colorable imitations of the Marks and have been in use in commerce as Defendant Atomic uses the infringing marks and displays them in the sale and advertising of its services and the services are rendered in commerce, including the use on Defendant Atomic's Washington website on the Internet.

36. Defendant Atomic's office within Washington is located at 303 Bradley Blvd #107, Richland, WA 99352, which is less than two (2) miles from NCP's Washington office.

37. On July 5, 2022, after learning of Defendant Atomic's use of its marks, NCP sent a written notice to Defendant Atomic in Washington, through counsel, demanding that Defendant Atomic cease and desist from using the name, "Atomic Home Health."

38. Then, on July 12, 2022, Defendant Atomic filed an application with the USPTO for the wordmark, "Atomic Home Health," but the application was abandoned without registration or publication of the wordmark by the USPTO.

39. On July 20, 2022, Mr. and Mrs. Wendt formed Atomic Home Care, LLC in Washington, which was administratively dissolved on December 3, 2024.

40. Then, on August 9, 2022, Defendant Atomic responded, through counsel, to NCP's July 5, 2022, cease and desist notice indicating that Defendant Atomic refuses to comply with NCP's demand and that it does not believe its tradename infringes on NCP's "Atomic Health News" marks.

41. On March 27, 2023, Mr. Wendt and Mrs. Wendt formed Atomic Home Health Care, LLC in Washington, which was administratively dissolved on August 3, 2025.

42. On June 2, 2024, Mr. Wendt filed articles of organization with the Nevada Secretary of State on behalf of Defendant Atomic, and Defendant Atomic began operating its business in Nevada thereafter.

43. In Nevada, Defendant Atomic markets, advertises, and provides the same in-home nursing and home health care services as NCP does, to the same market and prospective patients that NCP advertises and renders its services to, which are EEOICPA beneficiaries.

44. Defendant Atomic's Nevada office is located at 1050 E Flamingo Rd # W157, Las Vegas, NV 89119, which is less than seven (7) miles from NCP's Nevada office.

45. After registering as a business in Nevada, Defendant Atomic began using the following service mark and tradename, "Atomic Home Health Care," to market and advertise its services in Nevada while rendering services in Nevada and continues to use them to date, including on its website:

46. Defendant Atomic has been using the "Atomic Home Health Care" tradename and the design mark identified hereinabove in Paragraph 45 in commerce since June 2024.

47. The marks identified hereinabove in Paragraph 45 are colorable imitations of the Marks and have been in use in commerce as Defendant Atomic uses the marks and displays them in the sale and advertising of its services and the services are rendered in commerce in Nevada, including the marks' use on Defendant Atomic's Nevada website on the Internet.

48. Defendant Atomic Legacy was formed in Nevada on June 6, 2024, with Mr. Wendt and Mrs. Wendt filing the company's articles of organization.

49. Defendant Atomic Legacy markets, advertises, and provides the same in-home nursing and home health care services as NCP does, to the same market and prospective patients that NCP advertises and renders its services to, which are EEOICPA beneficiaries.

50. Defendant Atomic Legacy's office is located at 1050 E Flamingo Rd # W157, Las Vegas, NV 89119, which is less than seven (7) miles from NCP's Nevada office.

51. Upon information and belief, Defendant Atomic and Defendant Atomic Legacy operate out of and use the same office space and address in Nevada.

. . .

. . .

. . .

. . .

. . .

. . .

52. In or around June 2024, Defendant Atomic Legacy began using the following logo or mark and the name, "Atomic Legacy Home Health," to market and advertise its services in Nevada while rendering services in Nevada and continues to use them to date, including on its website:

EST. 2024
ATOMIC LEGACY
HOME HEALTH

53. The marks identified hereinabove in Paragraph 52 are colorable imitations of the Marks and have been in use in commerce as Defendant Atomic Legacy uses the marks and displays them in the sale and advertising of its services and the services are rendered in commerce, including the use on Defendant Atomic Legacy's website on the Internet.

54. NCP learned about Defendant Atomic's expansion into Nevada and the formation of Defendant Atomic Legacy in early 2025.

55. Consequently, on April 23, 2025, through counsel, NCP sent a second cease and desist notice to Mr. Wendt and Defendant Atomic and Defendant Atomic Legacy demanding that Defendants refrain from continuing to use the names, logos, and marks currently in use by Defendants.

56. On April 28, 2025, Defendant Atomic's Chief Operating Officer, Humberto Rodriguez, through counsel, filed an application with the USPTO for federal registration of the wordmark, "Atomic Home Healthcare," associated with International Class 044, specifically, home health care services and home-visit nursing care.

57. The applied-for wordmark, "Atomic Home Healthcare" was not registered or published by the USPTO, and the application is located at U.S. Serial No. 99159291, however, the application was deemed abandoned by the USPTO on January 6, 2026.

58. In the application, Mr. Rodriguez was the claimed owner of the applied-for wordmark, "Atomic Home Healthcare," despite the application stating that the owner is a limited liability company.

59. The application further provides that the applied-for wordmark, "Atomic Home Healthcare," had been in use in Nevada first since August 29, 2022, and had been first used in interstate

commerce on August 31, 2022, even though Defendant Atomic did not organize its business in Nevada until 2024.

60. Mr. Rodriguez was acting within the scope and authority of his employment with Defendant Atomic when he provided the information used in the filing of the application for the wordmark, "Atomic Home Healthcare."

61. Upon information and belief, Defendant Atomic is the owner of the wordmark, "Atomic Home Healthcare," which was applied for registration with the USPTO in the abandoned application contained at U.S. Serial No. 99159291.

62. Then, Defendants responded through counsel on May 28, 2025, to NCP's cease and desist notice dated April 23, 2025, refusing to comply with NCP's demands.

63. On July 16, 2025, NCP responded to Defendants' May 28, 2025, correspondence, through counsel.

64. Despite reiterating NCP's demands in July 2025, Defendants continue to use the infringing names, logos, and marks identified hereinabove as belonging to Defendant Atomic or Defendant Atomic Legacy, in commerce.

65. NCP and Defendants operate in the same industry and offer the same or substantially related services to the same market of consumers, *i.e.*, EEOICPA beneficiaries, in the same geographic markets.

66. Defendant Atomic and/or Defendant Atomic Legacy's infringing trademarks each share similarities with NCP's Marks, and as such, Defendant Atomic and/or Defendant Atomic Legacy's marks are likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association with Defendant Atomic and/or Defendant Atomic Legacy's marks.

67. Defendant Atomic and/or Defendant Atomic Legacy's respective use of their marks in commerce, and any combination thereof, is likely to cause confusion, mistake, or deception among consumers due to the degree of similarity between the Marks and Defendant Atomic and/or Defendant Atomic Legacy's marks; the intent of Defendant Atomic and/or Defendant Atomic Legacy in adopting the infringing marks; instances of actual confusion; the fact that NCP and Defendants' services are the same or related; the similarities between NCP and Defendants' manners of marketing; the degree of

care exercised by NCP and Defendants' customer bases; and the strength of the Marks compared to the weakness of Defendants', among other possible reasons.

68. Defendants' use of various names, logos, marks, etc. that are similar to one another as well as the Marks appear to be designed specifically to mimic the Marks by using the same or similar elements from the Marks.

69. Mr. Wendt and Mrs. Wendt willfully intended to create a likelihood of confusion and have Defendants benefit from the goodwill and reputation of NCP's business and the Marks through the use of the various names, logos, and marks identified hereinabove as belonging to Defendant Atomic or Defendant Atomic Legacy.

70. Defendant Atomic and/or Defendant Atomic Legacy intended to cause confusion with the Marks through the use of their respective marks, so that Defendant Atomic and/or Defendant Atomic Legacy could take business and prospective customers/patients away from NCP's business and commercially benefit from NCP's reputation and goodwill associated with the Marks.

## III. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Service Mark Infringement Pursuant to 15 U.S.C. § 1114)

71. Plaintiff incorporates the allegations contained in foregoing Paragraphs as being fully set forth herein by reference.

72. Plaintiff owns valid and protected ownership interests in the Marks, which are each and all entitled to the benefits of and protection under the Lanham Act against infringers of the Marks, whether each mark is registered or not.

73. There is a strong likelihood of confusion between Defendant Atomic and/or Defendant Atomic Legacy's respective marks and Plaintiff's Marks.

74. Through Defendant Atomic and/or Defendant Atomic Legacy's respective use of their marks, Plaintiff has sustained actual damages as a direct result of the infringing conduct, all in amounts to be proven at trial.

WHEREFORE, Plaintiff requests the relief set forth at the end of this Complaint.

. . .

**SECOND CLAIM OF RELIEF**

**(Nevada Common Law Tradename/Service Mark Infringement)**

75. Plaintiff incorporates the allegations contained in foregoing Paragraphs as being fully set forth herein by reference.

76. Plaintiff owns valid and protected ownership interests in the Marks, which are each and all entitled to the benefits of and protection under Nevada common law against infringers of the Marks, whether each trademark is registered or not.

77. There is a strong likelihood of confusion between Defendant Atomic and/or Defendant Atomic Legacy's respective marks and Plaintiff's Marks.

78. Through Defendant Atomic and/or Defendant Atomic Legacy's respective use of their marks, Plaintiff has sustained actual damages as a direct result of the infringing conduct, all in amounts to be proven at trial.

WHEREFORE, Plaintiff requests the relief set forth at the end of this Complaint.

**THIRD CLAIM OF RELIEF**

**(Preliminary and Permanent Injunction Pursuant to 15 U.S.C. § 1116)**

79. Plaintiff incorporates the allegations contained in foregoing Paragraphs as being fully set forth herein by reference.

80. Plaintiff has suffered and will continue to suffer irreparable injury, including to its goodwill, because of Defendant Atomic and/or Defendant Atomic Legacy infringing on the Marks.

81. Plaintiff will continue to suffer irreparable injury, including to its goodwill, without a preliminary injunction and a permanent injunction in effect.

82. Plaintiff has a likelihood of succeeding on the merits of its claims for trademark infringement against Defendants, under the Lanham Act or at common law.

83. The remedies available at law, such as monetary damages, are inadequate to compensate Plaintiff for the irreparable harm caused by and continuing to be caused by Defendant Atomic and/or Defendant Atomic Legacy.

84. Considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted.

85. The public interest would not be disserved by the Court issuing either a preliminary injunction or a permanent injunction under these circumstances, and no substantial harm would result to anyone as a result.

86. Plaintiff is therefore entitled to a preliminary injunction enjoining Defendant Atomic and/or Defendant Atomic Legacy from using the infringing marks, including any derivatives or combinations thereof, on a preliminary basis, and a permanent injunction enjoining Defendant Atomic and/or Defendant Atomic Legacy from using the infringing marks, including any derivatives or combinations thereof, on a permanent basis.

WHEREFORE, Plaintiff requests the relief set forth at the end of this Complaint.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter an order enjoining Defendant Atomic and/or Defendant Atomic Legacy from using their business names, logos, marks, and any derivative or combination thereof, on a preliminary basis until this matter has been resolved;

B. Enter an order enjoining Defendant Atomic and/or Defendant Atomic Legacy from using their business names, logos, marks, and any derivative or combination thereof, on a permanent and indefinite basis;

C. Award Plaintiff its economic damages for Defendant Atomic and/or Defendant Atomic Legacy's profits and any and all actual damages, including but not limited to, lost profits, sustained by Plaintiff as a result of Defendant Atomic and/or Defendant Atomic Legacy's respective violations, and award it treble actual damages, if applicable.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

D. Award Plaintiff its reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a), as well as its costs, court fees, and expert witness fees, as allowed by law, any and all other costs and fees allowed by law; and award it pre-judgment and post-judgment interest as allowed by law; and

E. Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated this 6th day of March 2026.

**FREEMAN MATHIS & GARY, LLP**

*/s/ James V. Lovett*
Eric K. Stryker, Esq.
Nevada Bar No. 5793
James V. Lovett, Esq.
Nevada Bar No. 16103
770 E. Warm Springs Rd., Ste. 360
Las Vegas, Nevada 89119

**WEGENER LANE & EVANS, P.C.**
Benjamin M. Wegener, Esq.
Colorado Bar No. 36952
*Pro Hac Vice Pending*
Dalen B. Porter, Esq.
Colorado Bar No. 55460
*Pro Hac Vice Pending*
743 Horizon Court, Suite 200
Grand Junction, Colorado 81506
*Attorneys for Plaintiff*