DANIEL HERSHKOWITZ (NSB # 15245)
**GRAVIS LAW, PLLC**
9130 Double Diamond Pkwy, Ste.100
Reno, Nevada 89521
Telephone: (775) 800-7624
Email: DHershkowitz@gravislaw.com

BIL G. CHILDRESS (WSBA #45203)
**GRAVIS LAW, PLLC**
1309 W. Dean Ave., Ste 100
Spokane, WA 99201
Telephone: (509) 228-3863
Email: BChildress@gravislaw.com

STEPHEN S. ZIMOWSKI (CBA #435451)
**GRAVIS LAW, PLLC**
503 Knight Street, Suite A
Richland, WA 99352
Telephone: (509) 380-9102
Email: SZimowski@gravislaw.com

*Attorneys for Atomic Legacy Home Health, LLC, a Nevada limited liability company; Atomic Home Health, LLC, a Washington limited liability company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NUCLEAR CARE PARTNERS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ATOMIC LEGACY HOME HEALTH, LLC, a Nevada limited liability company; ATOMIC HOME HEALTH, LLC, a Washington limited liability company.<br><br>Defendants. | Case No.: 2:26-cv-00640<br><br>**DEFENDANTS' SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660** |

Defendants Atomic Legacy Home Health, LLC and Atomic Home Health, LLC (collectively, "Atomic" or "Defendants"), by and through their undersigned counsel of record, hereby move this court for entry of an order dismissing with prejudice Plaintiff Nuclear Care Partners, LLC's ("NCP") Complaint pursuant to NRS 41.660, the Memorandum in Support of Defendants' Special Motion to Dismiss, the pleadings and files of record herein, and any arguments of counsel the court may consider.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO DISMISS**

## I. INTRODUCTION

For nearly four years, Plaintiff has engaged in a concerted anti-competitive effort to unlawfully monopolize an industry intended to benefit former Department of Energy ("DoE") employees and civilian contractors under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"). During that time, Atomic endured baseless accusations of trademark infringement (July 2022), resisted unwanted hostile purchase/merger offers (spring 2025), and contended with additional specious trademark allegations (April 2025). Plaintiff recently escalated its ongoing attacks on Atomic by filing the present action and seeking a court order enjoining Defendants' free speech and restricting their ability to petition federal agencies, all without notice to Atomic.

The Nevada Anti-SLAPP Statute, NRS 41.635–41.670, protects good faith communication made in furtherance of the rights to petition and free speech on matters of public concern and provides for the dismissal of claims targeting such activity. Here, Defendants' targeted activities include good faith communications with current and former DoE employees and contractors, and petitioning the Department of Labor ("DoL") for payment for providing home health care services to eligible EEOICPA beneficiaries. Such conduct falls squarely within the protections of the Nevada Anti-SLAPP Statute. Nev. Rev. Stat. Ann. § 41.637. In contrast, Plaintiff's lawsuit attempts to curb such activities and good faith communications, which is precisely the type of action the statute was enacted to prevent. Therefore,

Defendants respectfully request that the Court dismiss Plaintiff's Complaint and award Defendants their reasonable costs and attorney fees.

## II. FACTS

Defendants facilitate and provide home health care services to the recipients of medical benefits pursuant to the EEOICPA. (Declaration of Stephen Wendt in Support of Defendants' Special Motion to Dismiss Pursuant to NRS 41.660, ¶ 4, submitted herewith as Exhibit A (hereinafter, "Wendt Decl.").) EEOICPA compensation is available to current or former employees of qualifying Department of Energy facilities that have been diagnosed with work-related health conditions, including those caused by exposure to radiation, beryllium, silica, and other toxic substances incident to their employment. (Declaration of Stephen S. Zimowski in Support of Defendants' Special Motion to Dismiss Pursuant to NRS 41.660, ¶ 7, Ex. 6, submitted herewith as Exhibit B (hereinafter, "Zimowski Decl.").) All of Defendants' clients receiving home health care services are beneficiaries of the EEOICPA benefits program and are accordingly former civil servants or civilians employed by a Department of Energy facility. (Wendt Decl., ¶¶ 4, 7.)

Defendants market and offer their services under various trademarks, tradenames, logos, service marks, and the like, all of which incorporate the primary term "Atomic." (Wendt Decl., ¶¶ 5-6.) In competition with Defendants, Plaintiff likewise offers medical services to EEOICPA beneficiaries and purportedly does so under various trademarks, tradenames, logos, service marks, and the like using the primary term "Nuclear." ECF 1, ¶¶ 9-10, 16-22. Both Plaintiff and Defendants market their services under their respective marks to eligible beneficiaries of the EEIOCPA, and Defendants do so exclusively. ECF 1, ¶¶ 9-10, 16-22; (Wendt Decl., ¶¶ 4, 7.) Further, both Plaintiff and Defendants receive payment for the services rendered through the EEIOCPA program directly from the administrators of the program at the Department of Labor. (Wendt Decl., ¶ 9.)

On July 5, 2022, Plaintiff sent Defendant Atomic Home Health a demand letter alleging infringement of its trademark rights. ECF 1, ¶ 37; (Wendt Decl., ¶ 10.) On August 9, 2022, Defendant Atomic Home Health responded to Plaintiff's baseless allegations, demonstrating there was no likelihood of confusion between the marks used by Defendant Atomic Home Health and any valid trademark right of Plaintiff. ECF 1, ¶ 40; (Wendt Decl., ¶ 11.)

On March 25, 2025, Defendants received an email purportedly from Plaintiff's CEO and Co-Founder Jenna Noem soliciting a possible merger, buyout, or partnership with Defendants. (Wendt Decl., ¶ 12.) On May 20, 2025, Defendants received another similar email from Plaintiff again soliciting some form of corporate transaction. (Wendt Decl., ¶ 14.) And around the beginning of 2026, Defendants were informed that Plaintiff's representatives were seeking a discussion directly with Stephen Wendt, CEO of Defendants, to discuss the possibility of a corporate transaction. (Wendt Decl., ¶ 17.) Defendants did not respond positively to any of these solicitations. (Wendt Decl., ¶¶ 12, 14, 17.)

In the meantime, on April 23, 2025, Plaintiff sent a second demand alleging infringement of Plaintiff's trademark rights. ECF 1, ¶ 55; (Wendt Decl., ¶ 13.) In response, Defendants again demonstrated Plaintiff's infringement allegations were baseless. ECF 1, ¶ 62; (Wendt Decl., ¶ 15.) Thereafter, on July 16, 2025, Plaintiff reiterated its allegations, but took no further action. ECF 1, ¶ 63; (Wendt Decl., ¶ 16.)

On March 6, 2026, Plaintiff filed its Complaint. ECF 1. Instead of promptly serving the Complaint, Plaintiff simultaneously filed a "Motion for Ex Parte Temporary Restraining Order." ECF 3. In briefing, Plaintiff represented to the Court that "time is of the essence" in enjoining Defendants' use of its trademarks, logos, and branding incorporating the primary term Atomic, so much so that an injunction was appropriate without notice to Defendants or an opportunity to respond. ECF 3, p. 6. Notably,

Defendants' public uses of the contested trademarks, logos, and branding have not changed in any meaningful way since Plaintiff's first demand letter from July 5, 2022. (Wendt Decl., ¶¶ 5, 18.)

Because Plaintiff failed to support its Motion with "any evidence, and … failed to comply with all relevant rules in seeking ex parte relief," the Court denied Plaintiff's ex parte motion and ordered Plaintiff to serve its Complaint on Defendants. ECF 9, 17. Plaintiff finally served Defendants on May 28, 2026, nearly four years after its initial allegations of trademark infringement. ECF 18.

## III. <u>DISCUSSION</u>

### A. <u>Legal Standard.</u>

The Nevada Anti-SLAPP Statute provides for a special motion to dismiss a claim based on a good faith communication in furtherance of the right to petition or free speech in direct connection with an issue of public concern. Nev. Rev. Stat. § 41.660(1)(a) (2025). Nevada courts employ a two-prong, burden-shifting framework in assessing a special motion to dismiss pursuant to the Statute. *Delucchi v. Songer*, 133 Nev. 290 (2017). The first prong requires the court to "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. § 41.660(3)(a); *see also Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020). If the court is satisfied that movant has satisfied the first prong, the burden then shifts to the plaintiff to demonstrate with prima facie evidence "a probability of prevailing on the claim." Nev. Rev. Stat. § 41.660(3)(b); *see also Stark*, 136 458 P.3d at 345.

To carry its burden under the first prong of the analysis, the movant must demonstrate that the communications at issue were made in "good faith in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" by satisfying one of the following:

(1) Communication that is aimed at procuring any governmental or electoral action, result or outcome;

(2) Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity;

(3) Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law; or

(4) Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood.

Nev. Rev. Stat. § 41.637; *Williams v. Lazer*, 137 Nev. 437, 440 (2021); and *Stark*, 136 458 P.3d at 345.

If the movant successfully carries its burden under the first prong and the plaintiff cannot carry its burden to establish "with prima facie evidence a probability of prevailing on the claim," the court must grant the special motion and dismiss the subject claim(s) with prejudice. Nev. Rev. Stat. § 41.660; *Abrams v. Sanson*, 136 Nev. 83, 85, 458 P.3d 1062, 1065 (2020). A defendant prevailing on a special motion to dismiss pursuant to the Nevada Anti-SLAPP Statute is entitled to an award of its reasonable costs and attorney's fees incurred since the inception of litigation and additional compensation at the court's discretion. Nev. Rev. Stat. § 41.670 (2025); *Smith v. Zilverberg*, 137 Nev. 65, 66 (2021).

B. Defendants' Communications Reflecting its Trademarks and Branding are Made in Good Faith and in Furtherance of Their Petition and Free Speech Rights.

Plaintiff's claims alleging trademark infringement are based upon Defendants' communications, through its website and other marketing materials and activities, reflecting its unique trademarks, logos, and branding. ECF 1, ¶¶ 33-35, 43-47, 52-53. There is no genuine dispute that Defendants' communications are truthful and legitimately identify Defendants' business offerings and activities. Defendants' communications are directed to current and potential beneficiaries of the EEOICPA compensation program as well as the federal agencies—namely, the Department of Labor—responsible for qualifying, managing, and administering the EEOICPA compensation program and the payment of funds authorized therefrom. (Wendt Decl., ¶¶ 4-9.) Defendants' communications accordingly satisfy the

first prong of the Nevada Anti-SLAPP Statute's two-prong, burden-shifting framework. Nev. Rev. Stat. § 41.637; *Williams v. Lazer*, 137 Nev. 437, 440 (2021).

*1. Defendants' Good Faith Communications are Aimed at Procuring Benefits on Behalf of Home Health Care Patients from the Department of Labor under the EEOICPA Compensation Program.*

Defendants' communications qualify under Section 41.637(1) of the Nevada Anti-SLAPP Statute, being directed to qualifying patients for home healthcare services under the EEOICPA compensation program and to procuring payment for said services directly from the program's administrators at the Department of Labor. Defendants' communications are thus "aimed at procuring [a] governmental or electoral action, result or outcome." Nev. Rev. Stat. § 41.637(1).

Defendants provide and facilitate home health care services exclusively to beneficiaries of the EEOICPA compensation program—former civil servants and civilian contractors of Department of Energy facilities who were diagnosed with work-related conditions caused by exposure to radiation, beryllium, silica, and other toxic substances incident to their employment. (Wendt Decl., ¶¶ 4-9); *see also* (Zimowski Decl., ¶ 7, Ex. 6.) The Department of Labor, through its Office of Workers' Compensation Programs, qualifies these beneficiaries, administers the program, and pays the funds authorized under it directly to service providers like Defendants. (Wendt Decl., ¶¶ 8-9); *see also* (Zimowski Decl., ¶ 7, Ex. 6.) Defendants' purportedly infringing communications—their website, marketing materials, and other activities reflecting their "Atomic" marks—are directed both to current and prospective EEOICPA beneficiaries and to the federal agencies responsible for qualifying, managing, and administering the program and disbursing its funds. (Wendt Decl., ¶¶ 4-9.) Each such communication is hence aimed at the same governmental "action, result, or outcome;" namely, connecting eligible beneficiaries with covered home health services so that DoL will approve and pay the benefits to which those beneficiaries are entitled. Nev. Rev. Stat. § 41.637(1).

Notably, qualifying communications need not be submitted directly to a governmental agency. *Adelson v. Harris*, 133 Nev. 512, 519, 402 P.3d 665, 671 (2017) (statute's protection is "not limited to a communication made directly to a governmental agency" so long as communication is aimed at procuring a governmental result). A qualifying communication may accordingly be directed to "either the government or the public." *Id.* at 520. Defendants' communications to EEOICPA beneficiaries are aimed at procuring DoL's qualification of those beneficiaries and its payment of their home health benefits, and they accordingly qualify under the Statute whether any given communication is directed to the agency itself. *Id.* at 519; *see also Omerza v. Fore Stars, Ltd.*, 136 Nev. 856, 860, 455 P.3d 841, 845 (2020) (unpublished, table disposition) (communications "aimed at procuring a governmental action, result or outcome" qualify under the statute).

That Defendants' communications also serve a commercial purpose, does not remove them from the statute's protection. Advertising and commercial speech are not categorically excluded under the Statute, so long as Defendants show that the communications satisfy one of the four enumerated categories of Section 41.637 of the Statute and satisfy the good-faith requirement. *Coker v. Sassone*, 135 Nev. 8, 12, 432 P.3d 746, 749 (2019) (assessing whether defendant's commercial advertising activities were protected under the Nevada Anti-SLAPP Statute pursuant to Section 41.637); *Panik v. TMM, Inc.*, 139 Nev. 526, 538, P.3d 1149 (2023) (holding that Nevada Anti-SLAPP Statutes "do not exclude any particular types of claims for relief from their scope" because the "definitional focus is not the form of the plaintiff's cause of action by, rather, the defendant's activity that gives rise to his or her asserted liability" and protection therefore "may apply to any cause of action").

Because Defendants' good faith communications are aimed at procuring governmental action, result, or outcome under Section 41.637(1), they satisfy the first prong of the anti-SLAPP framework. Nev. Rev. Stat. § 41.637.

2. *Defendants' Good Faith Communications are Reasonably of Concern to the Department of Labor's Administration of the EEOICPA Compensation Program.*

Defendants' communications also qualify under Section 41.637(2) of the Nevada Anti-SLAPP Statute, which covers any "[c]ommunication of information or a complaint to a Legislator, officer or employee of the Federal Government … regarding a matter reasonably of concern to the respective governmental entity." Nev. Rev. Stat. § 41.637(2).

Defendants' communications to wit: their website, marketing materials, and related advertising, outreach, and related activities are directed to current and prospective beneficiaries of home health care services provided through the EEOICPA compensation program and to DoL, the federal agency responsible for administering the program. (Wendt Decl., ¶¶ 4-8.) Defendants receive payment for the home healthcare services provided directly from the Department. (*Id.*, ¶ 9.) The identity, offerings, availability, and pricing of a home healthcare provider exclusively serving EEOICPA beneficiaries are plainly matters of concern to the agency responsible for qualifying beneficiaries, approving covered services, and authorizing payment to Defendants as providers. (*Id.*, ¶¶ 6, 8-9.)

Accordingly, Defendants' communications reflecting their trademarks, logos, and branding are directed to and convey information to a federal agency regarding a matter reasonably of concern to that agency and qualify under Section 41.637(2), satisfying the first prong of the Nevada Anti-SLAPP Statute's framework. Nev. Rev. Stat. § 41.637(2); *Omerza*, 136 Nev. at 861, 455, P.3d at 845 (holding written declarations submitted "to a political subdivision of the state" "communicated information … regarding a matter reasonably of concern to that political subdivision," satisfying NRS 41.637(2)); *Thomson v. Helix Elec. of Nevada, LLC*, 538 P.3d 1155, 1157 (Nev. 2023) (unpublished, table disposition) (upholding dismissal of claims pursuant to Nevada Anti-SLAPP Statute that were based upon good faith communications regarding matters reasonably of concern to state labor agency).

### 3. *Defendants' Good Faith Communications are Made in Direct Connection with the Legally Authorized Administration of the EEOICPA Compensation Program by the Department of Labor.*

Defendants' communications further satisfy Section 41.637(3) of the Nevada Anti-SLAPP Statute, covering any "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." Nev. Rev. Stat. § 41.637(3). The Supreme Court of Nevada has held that a statement is made "in direct connection with an issue under consideration" for purposes of Section 41.637(3) where the statement (1) relates to the substantive issue under consideration and (2) is directed to persons having some interest in the matter. *Patin v. Ton Vinh Lee*, 134 Nev. 722, 726, 429 P.3d 1248, 1252 (2018).

The EEOICPA compensation program is a federal benefits program authorized by law and administered by DoL, which qualifies beneficiaries and providers and manages the payment of funds authorized under the program. (Zimowski Decl., ¶ 7, Ex. 6.) Anytime Defendants notify DoL of the provision of home healthcare services to an EEOICPA beneficiary or seek qualification of a new EEOICPA beneficiary, Defendants communicate regarding an issue under consideration by an executive body administering an official proceeding authorized by law. (Wendt Decl., ¶¶ 4-9.)

Because Defendants exclusively offer their home healthcare services to beneficiaries of the EEOICPA program, all communications reflecting their trademarks, logos, and branding relate to a substantive issue under consideration and are directed to persons having an interest in the outcome of that determination. *Patin*, 134 Nev. at 726, 429 P.3d at 1252. Defendants' communications relate directly to the substantive matters DoL must resolve in administering the program, including the identity and offerings of a covered provider; the availability of covered home health services; and the qualification of and payment for those services. Defendants' communications are directed to persons with a direct interest in that administration: the beneficiaries whose eligibility and benefits are at stake

and the Department itself, which qualifies those beneficiaries and disburses the funds. *Patin*, 134 Nev. at 726, 429 P.3d at 1252.

Thus, Defendants' communications satisfy Section 41.637(3) of the Nevada Anti-SLAPP Statute as well.

*4. Defendants' Good Faith Communications are Made in a Public Forum and in Direct Connection with an Issue of Public Interest.*

Finally, Defendants' communications satisfy Section 41.637(3) of the Nevada Anti-SLAPP Statute as "[c]ommunications made in direct connection with an issue of public interest in a place open to the public or in a public forum." Nev. Rev. Stat. § 41.637(4). The Supreme Court of Nevada has adopted California's framework for assessing what is "an issue of public interest," providing certain guiding principals: (1) requires more than a "mere curiosity"; (2) is of concern to a substantial number of people (a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest); (3) degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient; (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and (5) statement directed to a large number of people is not, in and of itself, matter of public interest. *Shapiro v. Welt*, 133 Nev. 35, 39-40, 389 P.3d 262, 266-67 (2017) (citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1140–41 (Cal. Ct. App. 2003)).

As elucidated by the guiding principles adopted by the *Shapiro* Court, Defendants' communications reflecting its trademarks, logos, and branding are made in direct connection with an issue of public interest: as stated throughout, healthcare received by former DoE employees and civilian contractors facilities suffering from employment related harms caused by exposure to environmental toxins and radiation, and are presented in a public forum to the general public, though not all recipients of Defendants' communications qualify for benefits. Nev. Rev. Stat. § 41.637(4). Ensuring current and

former public servants who suffer measurable harm incident to their employment at Department of Energy facilities, particularly in connection with issues of national security such as nuclear energy programs, receive adequate care is certainly of public interest, as is the care of veteran service members after their deployment. In both cases, the public at large through federal agencies has an interest in ensuring these individuals receive adequate healthcare, and those concerns are not limited to a "mere curiosity" or even to just the subset of individuals that qualify to receive those benefits. *Shapiro*, 133 Nev. at 39, 389 P.3d at 266.

Defendant's communications are inextricably intertwined with advancing these public interests, as Defendants' offer home healthcare services exclusively to EEOICPA beneficiaries. (Wendt Decl., ¶ 7.) The Department of Labor's ability to assess Defendants as a service provider and assess its service offerings, its availability, and its pricing competitiveness requires the very identification and information provided by Defendants' communications reflecting its trademarks, logos, and branding. *Shapiro*, 133 Nev. at 39, 389 P.3d at 266. Defendants' trademarks, logos, and branding primarily reflecting the term "Atomic" and imagery of an atom are themselves informational and indicative of the health services Defendants provide to former nuclear energy employees, the vast majority of beneficiaries under the EEOICPA program, demonstrating the degree of closeness between the communications and the public interest. (Wendt Decl., ¶ 6); *Shapiro*, 133 Nev. at 39, 389 P.3d at 266.

Defendants' communications are hence "made in direct connection with an issue of public interest in a place open to the public or in a public forum," satisfying Section § 41.637(4) of the Nevada Anti-SLAPP Statute, and Defendants' have carried their burden to demonstrate that Plaintiff's claims are based upon "good faith communication[s] in furtherance of [Defendants'] right to petition or right to free speech in direct connection with an issue of public concern." Nev. Rev. Stat. §§ 41.637(4), 41.660.

///

C. Plaintiff has Not and Cannot Present Prima Facie Evidence Supporting a Probability of Prevailing on its Claims of Trademark Infringement.

Having established that Plaintiff's trademark infringement claims are based upon Defendants' good faith communications covered by the Nevada Anti-SLAPP Statute, Plaintiff must demonstrate with prima facie evidence a probability of prevailing on those claims.[1] Plaintiff cannot satisfy this burden.

*1. Plaintiff is Plainly Unlikely to Prevail on its Lanham Act Claim and Therefore Cannot Present Prima Facie Evidence of a Probability of Prevailing.*

Plaintiff's "first claim for relief" asserts a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. ECF 1, ¶¶ 71-74. As demonstrated in Defendants' Motion to Dismiss for Failure to State a Claim, the Complaint fails to present a plausible Lanham Act claim, relying entirely on a purely conclusory recitation of the claim elements. But even allowing for the most favorable interpretation of the Complaint's conclusory assertions, Plaintiff still cannot present prima facie evidence of a probability of prevailing.

A claim for trademark infringement under Section 32 of the Lanham Act requires proving both the plaintiff's ownership of a valid, registered trademark right and the defendant's commercial use of an identical mark or of a "colorable imitation" that is sufficiently similar as to be likely to cause confusion among consumers of the associated goods or services. 15 U.S.C. § 1114; *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1245 (9th Cir. 2022). Notably, and despite Plaintiff's assertions to the contrary in paragraph 72 of the Complaint, Section 32 protects only "registered" trademark rights. 15 U.S.C. § 1114; *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1044 n.8 (9th Cir. 1999); *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970-71 (9th Cir. 2007).

---

[1] While Plaintiff's Complaint contains three identifiable "claims for relief," the first and second accuse Defendants of trademark infringement under the Lanham Act and Nevada common law, respectively. ECF 1. The "third claim for relief" is in fact an improperly pleaded remedy request presented as a standalone claim, which the Court should dismiss on the grounds identified in Defendants' Motion to Dismiss for Failure to State a Claim. ECF 1; ECF 20.

While Plaintiff's Complaint woefully fails to provide a factual basis with sufficient specificity to present a plausible Section 32 claim, it does identify three U.S. Trademark Registrations upon which Plaintiff purportedly relies: U.S. Trademark Reg. Nos. 4734662, 5071734, and 5076814 ("Plaintiff's TM Registrations"). ECF 1, ¶¶ 16-23. Because federal registration of a trademark "on the Principal Register … constitutes prima facie evidence of the validity of the registered mark and of [a registrant's] exclusive right to use the mark," Plaintiff's TM Registrations demonstrate Plaintiff's ownership of valid, registered trademark rights. *Brookfield*, 174 F.3d at 1047.

Each of Plaintiff's TM Registrations incorporates the same design consisting of an image of an atom with three electrons, each associated with an electron orbit ring, and a nucleus that consists of a heart containing a cross in inverted contrast. ECF 1, ¶¶ 16-20. U.S. Trademark Reg. No. 4734662 also explicitly claims the colors "red, white and black … as a feature of the mark," the red being used specifically on the heart, and includes the verbiage "NCP Nuclear Care Partners Helping Families Live Well at Home" in a particular arrangement. (Zimowski Decl., ¶ 2, Ex. 1.) Plaintiff was required, during the U.S. Trademark Office's review of the application that matured into Reg. No. 4734662, to explicitly disclaim any exclusive right to use the verbiage "Nuclear Care Partners" apart from the mark depicted in its entirety. (*Id.*, ¶ 3, Ex. 2.)

U.S. Trademark Reg. No. 5076814 also includes the verbiage "Nuclear Care Partners," and Plaintiff was again required to explicitly disclaim any exclusive right to use "Nuclear Care Partners" apart from the mark depicted in its entirety during the U.S. Trademark Office's review. (*Id.*, ¶¶ 4-5, Ex.3, Ex. 4.) U.S. Trademark Reg. No. 5071734 includes no claims to color or additional verbiage, exclusively depicting the atom design shared by Reg. Nos. 4734662 and 5076814. (*Id.*, ¶ 6, Ex. 5.)

Plaintiff purportedly identifies Defendants' infringing marks in paragraphs 34, 45-46, and 52 of the Complaint. ECF 1. As demonstrated at length in Defendants' Motion to Dismiss for Failure to State a

Claim, nowhere does Plaintiff identify with specificity any purported similarities between the marks reflected in Plaintiff's TM Registrations and those purportedly used by Defendants. ECF 1; ECF 20. But because the Court will need to assess such similarities in determining whether Plaintiff can present prima facie evidence to support a probability of prevailing on its Lanham Act claim,[2] Defendants endeavor to support the Court's assessment below.

Each of the marks Plaintiff's assert Defendants use in connection with the provision of their home healthcare services incorporates the primary term "Atomic." ECF 1, ¶¶ 34, 45-46, 52. None of Plaintiff's TM Registrations use the term "Atomic," instead utilizing the primary term "Nuclear," where any verbiage is included. *Id.*, ¶¶ 16-20. The only term that any of the marks Plaintiff asserts Defendants use share in common with any of Plaintiff's TM Registrations is the term "home," which is part of the verbiage included in Reg. No. 4734662. *Id.*, ¶¶ 16-20, 34, 45-46, 52. There is no reasonable argument that the common use of the term "home" can support a finding of likelihood of confusion, so all that remains are the design elements of Plaintiff's TM Registrations, specifically the atom design that is the subject of Reg. No. 5071734 and is incorporated in Reg. Nos. 4734662 and 5076814.

As discussed above, the primary uniqueness, and thus brand significance, of Plaintiff's atom design lies in the nucleus, which has been replaced with a heart containing a cross in inverted contrast. *Id.*, ¶¶ 16-20. The design also depicts three electrons each associated with one of three electron orbit rings. *Id.* None of the marks purportedly used by Defendants shares any similarities with the unique nucleus design of Plaintiff's TM Registrations. *Compare* ECF 1, ¶¶ 16-20 *with* ECF 1, ¶¶ 34, 45-46, 52. Thus,

[2] It is axiomatic that assessing the similarities of trademarks is the most critical factor relevant to the infringement inquiry, as "when marks are entirely dissimilar, there is no likelihood of confusion." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1051 (9th Cir. 2025); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) ("The first *Sleekcraft* factor—the similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis.").

Plaintiff must rely entirely and exclusively on the common use of an atom design containing three electrons and three electron orbit rings as the sole similarity between the marks. *Id.*

Plainly, Plaintiff cannot present prima facie evidence of trademark infringement under Section 32 of the Lanham Act on the basis of the common use of an atom design containing three electrons and three electron orbit rings. Plaintiff has not even sought to argue that it enjoys a monopoly right over the use of such design elements for obvious reasons. And some of the purported marks of Defendants that Plaintiff asserts infringe its trademark rights under the Lanham Act do not even contain those design elements. *See* ECF 1, ¶¶ 34, 45.

Plaintiff cannot plausibly prevail on its claim under 15 U.S.C. § 1114. Plaintiff cannot present prima facie evidence supporting a probability of prevailing on its claim under 15 U.S.C. § 1114. Plaintiff's first claim for relief should be dismissed with prejudice pursuant to Section 41.660 of the Nevada Anti-SLAPP Statute. Nev. Rev. Stat. § 41.660.

2. *Plaintiff is Likewise Unlikely to Prevail on its Claim of Trademark Infringement under Nevada Common Law and Therefore Cannot Present Prima Facie Evidence of a Probability of Prevailing.*

Plaintiff's second claim for relief asserts infringement of Plaintiff's trademark rights in violation of Nevada common law. ECF 1, ¶¶ 75-78. A claim of trademark infringement under Nevada common law requires consideration of the same elements as that of a federal trademark infringement claim under Section 32 of the Lanham Act. *See Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1188 (D. Nev. 2003) (citing *General Motors Corp. v. Let's Make A Deal*, 223 F. Supp.2d 1183, 1188 (D. Nev. 2002)).

The only discernable difference between Plaintiff's trademark infringement claim under Section 32 of the Lanham Act and Plaintiff's trademark infringement claim under Nevada common law appears to be the inclusion of Plaintiff's purported unregistered trademark rights. ECF 1, ¶¶ 75-78. The only unregistered mark Plaintiff identifies in the Complaint is its purported "Atomic Health News" mark

depicted in paragraph 25 ("Plaintiff's Purported AHN Mark"). *Id.*, ¶ 25. Accordingly, the analysis of Section III.C.2 above relating to Plaintiff's TM Registrations applies identically to Plaintiff's trademark infringement claim under Nevada common law, leaving only Plaintiff's Purported AHN Mark as a basis for its Nevada common law trademark infringement claim.

Plaintiff's entire identification and description of the nature of Plaintiff's Purported AHN Mark are provided in paragraph 27 of the Complaint, which is presented in its entirety below:

> 'Atomic Health News' has historically been a quarterly publication issued by NCP directly to its current patients to promote brand loyalty and provide information about NCP's services and EEOICPA benefits which is provided through the rendering of services by NCP, and it is also used to market/advertise to prospective patients by including the publications on NCP's website.

ECF 1, ¶ 27. Notably, the Complaint's description of the use of Plaintiff's Purported AHN Mark differs considerably from that presented in Plaintiff's prior communications to Defendants. (Wendt Decl., ¶ 10, Ex. 1.) But even accepting the assertions of paragraph 27 at face value, Plaintiff still plainly cannot present prima facie evidence to support a probability of prevailing on its Nevada common law claim.

First, the phrase "Atomic Health News" is plainly descriptive, and likely generic. By Plaintiff's own admission, it is used in connection with "a quarterly publication" to "provide information about … EEOICPA benefits." ECF 1, ¶ 27. EEOICPA benefits are healthcare benefits provided to former atomic energy employees. (Zimowski Decl., ¶ 7, Ex. 6.) And "news" is the act of providing information, making Plaintiff's Purported AHN Mark a description of providing information to recipients of EEOICPA benefits. This is precisely the type of mark that the Ninth Circuit has instructed repeatedly is generic and cannot be the subject of trademark protection. *See generally, e.g.*, *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143 (9th Cir. 1999); *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925 (9th Cir. 2005).

Indeed, the U.S. Trademark Office's insistence that Plaintiff disclaim the phrase "Nuclear Care Partners" is instructive here. (Zimowski Decl., ¶¶ 2-5.) The Trademark Office identified the phrase

"Nuclear Care Partners" as an "unregistrable component of the mark" and accordingly issued the disclaimer requirement. (*Id.*, ¶¶ 2-5, Ex. 2, Ex. 4.) While Plaintiff has chosen not to subject Plaintiff's Purported AHN Mark to scrutiny from the U.S. Trademark Office, it is likely that were Plaintiff to do so it would be required to disclaim the phrase "Atomic Health News" in the same manner or, were Plaintiff to seek registration of Plaintiff's Purported AHN Mark in plaintext, face a refusal on the basis that the mark is descriptive and/or generic. *See Filipino Yellow Pages*, 198 F.3d at 1148. So, Plaintiff cannot present prima facie evidence to support its ownership of trademark rights in Plaintiff's Purported AHN Mark.

And even if Plaintiff were to somehow demonstrate it does enjoy trademark rights in Plaintiff's Purported AHN Mark, it still cannot present prima facie evidence of a likelihood of confusion. While the marks purportedly used by Defendants share the common terms "Atomic" and "health" and, in some cases, a depiction of three electrons and three electron rings, that is where the similarities end. *Compare* ECF 1, ¶ 25 *with* ECF 1, ¶¶ 34, 52.[3] The remaining features of the marks purportedly used by Defendants, the color schemes, and the overall commercial impressions thereof all differ significantly from Plaintiff's Purported AHN Mark, rendering confusion unlikely. *Id.*

Furthermore, the services associated with Plaintiff's purported use of Plaintiff's Purported AHN Mark differ significantly from Defendants' uses of its own marks. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (identifying "the relatedness of the services" as a "part of the controlling troika in the *Sleekcraft* analysis") Defendant markets its services under its Atomic-based marks to EEOICPA beneficiaries, associated federal agencies, the general public. (Wendt Decl., ¶ 6.) Plaintiff acknowledges that its "quarterly publication" provided under Plaintiff's Purported AHN Mark

[3] Notably, the logo depicted in paragraph 45 of the Complaint is not one ever used by Defendants and is instead a logo used by a third party not subject to these proceedings. (Wendt Decl. ¶¶ 19-20.)

is instead presented "directly to current patients." ECF 1, ¶ 27. And a publication sharing information with current clients is a fundamentally different service than the provision of home healthcare services.

Accordingly, even providing Plaintiff with the most generous assessment of the contents of the Complaint and its trademark infringement claim under Nevada common law, it is clear that Plaintiff cannot present prima facie evidence in support of a probability of prevailing on its claim. Plaintiff's second claim for relief should accordingly be dismissed with prejudice pursuant to Section 41.660 of the Nevada Anti-SLAPP Statute as well. Nev. Rev. Stat. § 41.660.

D. Statutory Damages and Fee Shifting.

The Nevada Anti-SLAPP Statute provides for of a prevailing moving defendant's reasonable costs and attorney's fees. Nev. Rev. Stat. § 41.670(1)(a). The Nevada Supreme Court has also established that the Statute's provisions cover all reasonable costs and fees incurred since the inception of the litigation, and not just those incurred in pursuing dismissal pursuant to this Statute. *Smith v. Zilverberg*, 137 Nev. 65, 73, 481 P.3d 1222, 1230 (2021). Further, Section 41.670(1)(b) provides the Court with discretion to award statutory damages up to $10,000 to a prevailing moving defendant. Nev. Rev. Stat. § 41.670(1)(b). The Court may award such statutory damages to each individual defendant subject to the dismissed claim(s). *Zilverberg*, 137 Nev. at 75, 481 P.3d at 1231.

Defendants respectfully request that the Court award Defendants' reasonable costs and attorney's fees and exercise its discretion to award each individual Defendant, Atomic Legacy Home Health, LLC, and Atomic Home Health, LLC, statutory damages in the maximum allowable amount of $10,000.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Special Motion to Dismiss, dismiss Plaintiff's Complaint with prejudice, award Defendants their reasonable attorney's fees and costs pursuant to Section 41.670(1)(a), award each Defendant hereto statutory damages in the

amount of $10,000 pursuant to Section 41.670(1)(b), and grant such other and further relief as the court deems just and proper.

SIGNED and DATED this 27th day of July 2026.

**GRAVIS LAW, PLLC**


*/s/ Daniel C. Hershkowitz*
DANIEL C. HERSHKOWITZ (NSD #15245)
9130 Double Diamond Pkwy, Ste. 100
Reno, Nevada 89521
(775) 800-7624
DHershkowitz@gravislaw.com

-and-

BIL G. CHILDRESS (WSBA #45203)
**GRAVIS LAW, PLLC**
1309 W. Dean Ave., Ste. 100
Spokane WA 99201
(509) 228-3863
BChildress@gravislaw.com

STEPHEN S. ZIMOWSKI (CBA #435451)
**GRAVIS LAW, PLLC**
503 Knight Street, Suite A
Richland, WA 99352
Telephone: (509) 380-9102
Email: SZimowski@gravislaw.com

*Attorneys for Atomic Legacy Home Health, LLC, a Nevada limited liability company; Atomic Home Health, LLC, a Washington limited liability company*

# CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2026, I caused to be served a true and correct copy of **SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660** to the following individual(s) via the method indicated below:

| Party/Attorney | Method |
|---|---|
| ***Attorney for Plaintiff:***<br><br>BENJAMIN M. WEGENER, ESQ.<br>Colorado Bar No. 36952<br>Pro Hac Vice Pending<br>DALEN B. PORTER, ESQ.<br>Colorado Bar No. 55460<br>Pro Hac Vice Pending<br>**WEGENER LANE & EVANS, P.C.**<br>743 Horizon Court, Suite 200<br>Grand Junction, Colorado 81506<br>Tel: (970) 242-2645<br>ben@wlelegal.com<br>dalen@wlelegal.com<br>*Attorneys for Plaintiff*<br><br>ERIC K. STRYKER, ESQ.<br>Nevada Bar No. 5793<br>JAMES V. LOVETT, ESQ.<br>Nevada Bar No. 16103<br>**FREEMAN MATHIS & GARY, LLP**<br>770 E. Warm Springs Road, Suite 360<br>Las Vegas, Nevada 89119<br>Tel.: (725) 258-7360<br>Fax: (833) 336-2131<br>Eric.Stryker@fmglaw.com<br>James.Lovett@fmglaw.com | ☐ Hand Delivery<br>☐ U.S. Mail postage prepaid<br>☐ Overnight Mail<br>☐ Fax Transmission<br>X Electronically via CM/ECF |

**GRAVIS LAW, PLLC**

*/s/ Daniel C. Hershkowitz*
Daniel C. Hershkowitz
Nevada Bar No. 15245