**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nuclear Care Partners, LLC,<br><br>Plaintiff<br>v.<br><br>Atomic Legacy Home Health, LLC and Atomic Home Health, LLC,<br><br>Defendants | Case No.: 2:26-cv-00640-JAD-DJA<br><br>**Order Denying Defendants' Motions to Dismiss**<br><br>[ECF Nos. 20, 33] |

Nuclear Care Partners, LLC (NCP) and Atomic Legacy Home Health, LLC[1] both provide in-home nursing and home-healthcare services for former Department of Energy employees under a compensation program run by the Department of Labor. NCP maintains registered trademarks for its name and atom-themed logo, and it markets its services through a quarterly publication for its patients called Atomic Health News. Atomic entered the industry later and eventually also began using an atom-themed logo in the same markets. NCP sues Atomic for state and federal trademark infringement, contending that the similarities between the logos are likely to confuse consumers.

Atomic moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure (FRCP) 12(b)(6) and under Nevada's anti-SLAPP statute. I deny Atomic's anti-SLAPP motion because its use of logos and trademarks does not transform into good-faith communications related to the public interest simply because its target market is government

[1] I refer to Atomic Legacy Home Health, LLC and Atomic Home Health, LLC collectively as "Atomic" throughout this order.

employees and agencies. I also deny Atomic's FRCP 12(b)(6) motion because NCP's complaint alleges facts sufficient to state plausible trademark-infringement claims.

## Background

Plaintiff NCP provides in-home nursing and home-healthcare services to former Department of Energy employees and contractors who qualify as beneficiaries of the Energy Employees Occupational Illness Compensation Program Act (EEOICPA).[2] NCP began using variations of its service mark in 2011, which includes its name and an atom structure with a heart in the middle, and a cross inside of the heart:

NCP registered three variations of this trademark—one with the company's name, one with the company's name and tagline, and one with just the atom-and-heart image—in 2015 and 2016.[3] Each trademark is associated with International Class 044, which covers health-care-related services.[4] And in 2015, NCP started a publication called Atomic Health News that used the following design:

---

[2] ECF No. 1 at ¶ 9.

[3] *Id.* at ¶¶ 18–21.

[4] *Id.* at ¶ 22.

NCP did not register that mark, but it alleges that it has used it "on a continuous basis in interstate commerce since December 2015 and continues to use [it] in interstate commerce to date."[5]

Defendant Atomic was founded in 2019 as Atomic Home Health. It also provides in-home nursing and home-healthcare services to EEOICPA beneficiaries.[6] Around that time, it began using the following marks:

Atomic filed a trademark application for its name in 2022, but the U.S. Patent and Trademark Office (USPTO) later deemed the application abandoned.[7] Atomic registered as a Nevada business in 2024 and soon after began using these two logos:

NCP sent several cease-and-desist letters to Atomic, claiming that its name and logo are "colorable imitations" of NCP's registered and unregistered marks, but Atomic refused to refrain

[5] *Id.* at ¶ 28.

[6] *Id.* at ¶¶ 32–33.

[7] *Id.* at ¶ 38.

from using them.[8] Atomic again filed a trademark application for the "Atomic Home Health Care" name, but that application was deemed abandoned, too.[9]

In March 2026, NCP filed a complaint against Atomic with three claims for relief: (1) service-mark infringement under 15 U.S.C. § 1114, (2) tradename and service-mark infringement under Nevada common law, and (3) "preliminary and permanent injunction" under 15 U.S.C. § 1116.[10] Atomic moves to dismiss the complaint under FRCP 12(b)(6), contending that NCP doesn't allege sufficient factual allegations to support its infringement claims and that its third claim is a request for relief, not a standalone claim.[11] It also moves to dismiss under Nevada's anti-SLAPP statute, reasoning that its marketing communications are subject to protection because they involve the public interest, i.e., the health care of former federal employees.[12]

## Discussion

### A. NCP sufficiently alleges facts to support its trademark-infringement claims.

Atomic moves to dismiss NCP's complaint under FRCP 12(b)(6). Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[13] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[14] a plaintiff must make direct or inferential factual allegations about "all

---

[8] *Id.* at ¶¶ 37, 55.

[9] *Id.* at ¶¶ 56–57.

[10] *Id.* at ¶¶ 71–86.

[11] ECF No. 20.

[12] ECF No. 33.

[13] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the material elements necessary to sustain recovery under *some* viable legal theory."[15] A complaint that fails to meet this standard must be dismissed.[16]

To state a claim for federal trademark infringement,[17] a plaintiff must adequately allege that "(1) it has a valid, protectable trademark, and (2) that [the defendant's] use of the mark is likely to cause confusion."[18] "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case."[19] Courts in the Ninth Circuit consider the factors identified in *AMF, Inc. v. Sleekcraft Boats* when making that inquiry. They include: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines."[20] These factors do not have equal weight, and not every factor will be relevant in every case.[21] "Because a careful assessment of the pertinent factors that go into determining likelihood of confusion usually

---

[15] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[16] *Id.* at 570.

[17] Nevada's common-law trademark-infringement claim mirrors the federal standard, so this analysis applies to both of NCP's claims. *See A.L.M.N., Inc. v. Rosoff*, 757 P.2d 1319, 1321 (Nev. 1988) (adopting standards from federal precedent to analyze state trademark-infringement claim); *BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*, 723 F. Supp. 3d 973, 986 (D. Nev. 2024) ("The elements of common-law claims for trademark infringement and unfair competition mirror the federal standard." (cleaned up)).

[18] *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (citation omitted).

[19] *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

[20] *Id.* (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349 (9th Cir. 1979)).

[21] *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).

requires a full record, dismissal of trademark disputes at the pleading stage is generally disfavored."[22]

NCP's complaint adequately alleges that it has valid trademarks and that Atomic's marks are likely to cause confusion. Atomic contends that NCP doesn't describe the similarities of the competing marks, but the complaint includes pictures of the marks from which one can infer the basic gist of NCP's claim.[23] And though NCP doesn't engage in an analysis of the *Sleekcraft* factors in its complaint, it does allege facts that would be considered when analyzing those factors. For example, NCP alleges that the parties operate in the same geographical markets and target the same consumers, which goes to the proximity-of-services factor.[24] It also alleges that NCP has been using its marks since 2011, which goes to the strength of its marks.[25] NCP also alleges facts from which one can infer that, after NCP sent Atomic a cease-and-desist letter concerning possible infringement of its name, Atomic changed its logo in 2024 to one that shares more similarities with NCP's logo.[26] Those facts may go to Atomic's intent in using the marks.

Atomic contends that NCP fails to identify which of Atomic's marks infringe on which of NCP's marks. The complaint contains three different versions of NCP's mark and at least three different versions of Atomic's, and it generally states that Atomic's marks infringe on NCP's marks. Atomic argues that conflating the marks "obfuscates the distinctions among its own purported trademarks, fails to identify any similarities between any of its dissimilar and 'individually and inherently distinctive marks' and the marks purportedly used by [Atomic,] and

---

[22] *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1049 (9th Cir. 2025) (cleaned up).

[23] ECF No. 1 at ¶¶ 16, 18, 20, 24, 25, 45, 52.

[24] *Id.* at ¶¶ 43–44, 49–50.

[25] *Id.* at ¶¶ 9–21.

[26] *Id.* at ¶¶ 34–52.

prevents the efficient and effective assessment and defense of the complaint's allegations . . . ."[27] But I find that including the images of the marks and allowing the inference of comparison is sufficient to meet the low pleading standard for these claims.

Many of NCP's allegations are merely legal conclusions dressed up as facts. For example, NCP alleges that Atomic's marks are "likely to cause confusion, mistake, or deception among consumers due to the degree of similarity between the marks," Atomic's intent in adopting the marks, "instances of actual confusion, the fact that NCP and [Atomic's] services are the same or related, the similarities between NCP and [Atomic's] manners of marketing, the degree of care exercised by NCP and [Atomic's] customer bases, and the strength of the marks compared to the weakness of [Atomic's], among other possible reasons."[28] I do not take those and similar legal conclusions as true factual allegations.[29] But I find that NCP has alleged facts to support those conclusions with sufficient specificity to survive Atomic's 12(b)(6) motion to dismiss.[30]

**B. Atomic cannot carry its initial burden to show that Nevada's anti-SLAPP statute applies.**

Nevada's anti-SLAPP statute works as a "procedural mechanism to dismiss meritless lawsuits that a [plaintiff] initiates primarily to chill" the exercise of a defendant's "First

---

[27] ECF No. 20 at 6.

[28] ECF No. 1 at ¶ 67.

[29] *Ashcroft*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

[30] I do find that NCP's "claim" for preliminary and permanent injunctive relief is not a standalone claim but rather a request for relief. So going forward, the parties are to construe that section, ECF No. 1 at ¶¶ 79–86, as part of the complaint's prayer for relief instead of as a standalone third claim.

Amendment free-speech rights before incurring the costs of litigation."[31] Nevada Revised Statute (NRS) 41.660 provides a two-step approach for courts to resolve an anti-SLAPP motion. First, the defendants must "establish, by a preponderance of the evidence, that the [plaintiff's] claim is based upon a good-faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."[32] This burden can be satisfied by showing that the plaintiff's claim falls within one of four statutory categories of communication and that the communication at issue was either truthful or made without knowledge of its falsehood.[33] If the defendants succeed, "the burden shifts to the plaintiff to show 'with prima facie evidence a probability of prevailing on the claim.'"[34] Nevada's anti-SLAPP statute "does not exclude any particular claim for relief from its scope," focusing instead on "the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."[35] Courts should direct their focus to whether the plaintiff's "action takes aim at an act that furthers [a defendant's] free-speech rights."[36]

Atomic cannot meet its initial burden to show that NCP's trademark-infringement claims are based on "a good-faith communication in furtherance of the right to petition or the right to

---

[31] *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019) (cleaned up).

[32] Nev. Rev. Stat. § 41.660(3)(a).

[33] *Id.* at § 41.637; *see also Coker*, 432 P.3d at 750.

[34] *Coker*, 432 P.3d at 749 (quoting *Shapiro v. Welt*, 389 P.3d 262, 267 (Nev. 2017)).

[35] *Panik v. TMM, Inc.*, 538 P.3d 1149, 1153 (Nev. 2023) (quoting *Navellier v. Sletten*, 52 P.3d 703, 711 (Cal. 2002)); *see also Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) ("We ask whether GLAAD's state-law claims are based on conduct in furtherance of CNN's right of free speech in connection with a matter of public interest." (cleaned up)).

[36] *Greater L.A. Agency on Deafness, Inc.*, 742 F.3d at 422.

free speech in direct connection with an issue of public concern." NRS 41.637 defines this phrase to include any

> (1) communication that is aimed at procuring any governmental or electoral action, result, or outcome;
>
> (2) communication of information or a complaint to a Legislator, officer, or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity;
>
> (3) written or oral statement made in direct connection with an issue under consideration by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or
>
> (4) communication made in direct connection with an issue of public interest in a place open to the public or in a public forum.[37]

Atomic contends that its "communications, through its website and other marketing materials and activities, reflecting its unique trademarks, logos, and branding" qualify as good-faith communications under each category. The reasoning for each is essentially the same: because Atomic's business is exclusively targeted to beneficiaries of the EEOICPA program—all of whom are former Department of Energy employees—all of its communications to those beneficiaries (including the marketing of its logo and name) are aimed at procuring government funding, regard a matter of concern to a governmental entity, relate to an issue under consideration by a government entity, and concern an issue of public interest (healthcare for former federal employees suffering from employment-related harms).

Atomic's logo and marketing materials are not good-faith communications in furtherance of its free-speech or petition rights. Though the Nevada Supreme Court has not addressed a fact pattern like this one, California courts have. I find that the Nevada courts would adopt

[37] Nev. Rev. Stat. § 41.637.

California's approach to purely commercial speech like Atomic's. The Nevada Supreme Court has "repeatedly recognized the similarities between California's and Nevada's anti-SLAPP statutes" and "routinely look[s] to California courts for guidance in this area."[38] And in California, "[i]t is well established that commercial speech that does nothing but promote a commercial product or service is not speech protected under the anti-SLAPP statute."[39] Nor does commercial speech about a specific product or service become a matter of public interest merely because "the product category . . . is a subject of public interest and the products are regulated by public agencies[.]"[40] Atomic does not show that its marketing materials are meant to constitute a public dialogue about healthcare issues for former federal employees, home healthcare, or any other matter of public interest. Rather, those materials "were designed to further [Atomic's] private interest in increasing" the use of its services.[41]

So I conclude that Atomic's marketing materials do not qualify for protection under Nevada's anti-SLAPP statute. Holding otherwise would render almost all suits subject to an anti-SLAPP motion when a defendant's business involves selling particular services to governmental entities.[42] That result simply does not comport with the anti-SLAPP statute's

---

[38] *Coker*, 432 P.3d at 749; *see also Shapiro*, 389 P.3d at 268 (adopting California's test to determine if communications concern a matter of public interest under its anti-SLAPP statute).

[39] *L.A. Taxi Cooperative, Inc. v. The Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 927 (2015) (first citing *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 47 (2003) (finding that a listing of product ingredients on labels and a website was not entitled to anti-SLAPP protection), then citing *Consumer Justice Ctr. v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 599–601 (2003) (finding that a company's claims about its supplements in product literature were not protected by the anti-SLAPP statute))).

[40] *Id.* at 928, 930 ("Moreover, the mere fact that the subject of an advertisement is a matter of public interest or enjoys the full protection of the first Amendment . . . does not render the advertisement protected activity under the anti-SLAPP statute.").

[41] *Id.*

[42] *See id.* at 928 (opining that construing California's anti-SLAPP statute to cover marketing for a particular product "would allow every defendant in every false advertising case (or nearly any

purpose "to protect citizens' First Amendment rights to petition the government for redress of grievances and to free speech."[43] So I deny Atomic's anti-SLAPP dismissal motion.[44]

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motions to dismiss **[ECF Nos. 20, 33] are DENIED**.

U.S. District Judge Jennifer A. Dorsey
October 27, 2026

case that involves any type of speech) to bring a special motion to strike . . . even though it is obvious that the case was not filed for the purpose of chilling participation in matters of public interest").

[43] *Panik*, 538 P.3d at 1151.

[44] Throughout its response to Atomic's anti-SLAPP motion, NCP contends that the motion is frivolous or vexatious and seeks reasonable attorney's fees and costs incurred responding to it under NRS 41.670(2). *See* ECF No. 39 at 3, 7, 18. I decline to find that Atomic's motion was frivolous or vexatious. Atomic's arguments, though ultimately unsuccessful, are not so far afield that they could be deemed obviously meritless. So each party will bear its own costs and fees incurred litigating this motion.